UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| RAFAEL ROJAS-REYES, | ) |
| Petitioner, | ) ) ) |
| v. | ) ) Case No. 1:21-cv-02184-TWP-KMB |
| UNITED STATES OF AMERICA, | ) ) ) |
| Respondent. | ) |

### ORDER ON MOTION FOR RELIEF PURSUANT TO 28 U.S.C. § 2255 AND DENYING CERTIFICATE OF APPEALABILITY

This matter is before the Court on *pro se* Petitioner Rafael Rojas-Reyes' ("Rojas-Reyes") Amended Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 (Dkt 8). For the reasons explained below, the Motion must be **denied** and the action dismissed with prejudice. In addition, the Court finds that a certificate of appealability should not issue.

### I. THE § 2255 MOTION

A motion pursuant to 28 U.S.C. § 2255 is the presumptive means by which a federal prisoner can challenge his conviction or sentence. *See Davis v. United States*, 417 U.S. 333, 343 (1974). A court may grant relief from a federal conviction or sentence pursuant to § 2255 "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). "Relief under this statute is available only in extraordinary situations, such as an error of constitutional or jurisdictional magnitude or where a fundamental defect has occurred which results in a complete miscarriage of justice." *Blake v. United States*, 723 F.3d 870, 878-79

(7th Cir. 2013) (citing *Prewitt v. United States*, 83 F.3d 812, 816 (7th Cir. 1996); *Barnickel v. United States*, 113 F.3d 704, 705 (7th Cir. 1997)).

## II. FACTUAL BACKGROUND

On January 10, 2018, Rojas-Reyes was charged in a multi-defendant, ten-count Superseding Indictment under Case No. 1:16-cr-00123-TWP-MJD-1 ("the Crim. Dkt.") with: Count 1 -- conspiracy to distribute 500 grams or more of methamphetamine (mixture), and/or five kilograms or more of cocaine (mixture), in violation of 21 U.S.C. §§ 841(a)(1) and 846; Count 3 -- engaging in a criminal enterprise, in violation of 21 U.S.C. § 848(a) and (b)(1); Count 4 -- conspiracy to launder monetary instruments, in violation of 18 U.S.C. § 1956(h); Count 5 -- distribution of 500 grams or more of methamphetamine (mixture), in violation of 21 U.S.C. § 841(a)(1); Count 6 -- distribution 50 grams or more of methamphetamine (mixture), in violation of 21 U.S.C. § 841(a)(1); and Count 8 -- possession with intent to distribute 500 grams or more of methamphetamine (mixture), in violation of 21 U.S.C. § 841(a)(1). (Crim. Dkt. 669.)

The Court initially appointed Michael Donahoe to represent Rojas-Reyes as counsel, but on July 27, 201, Rojas-Reyes requested that Donahoe withdraw. (Crim. Dkts. 29, 351.) Attorney Richard Ford was subsequently appointed to represent Rojas-Reyes. (Crim. Dkt. 362.) Four of the seventeen charged defendants proceeded to trial and following an eight-day trial, a jury convicted Rojas-Reyes on Counts 1, 3, 4, 5, 6, and 8. (Crim. Dkt. 669.)

The crimes committed by Rojas-Reyes and his co-defendants, as summarized by the Seventh Circuit, are as follows:

> Among those it indicted were four who chose to go to trial: Jose Manuel Carrillo-Tremillo, Hector Saul Castro-Aguirre, John Ramirez-Prado, and Rafael Rojas-Reyes.
>
> The defendants before us all played active roles in a cross-country drug organization: Castro-Aguirre served as the head of operations; Ramirez-Prado handled logistics, including providing cars and hotels for distributors and couriers;

> Rojas-Reyes coordinated sales in Indianapolis; and Carrillo-Tremillo conducted sales in the northeast. To set the stage, we provide a brief overview of their activities from 2015 to 2016.
>
> Castro-Aguirre coordinated shipments of methamphetamine— usually 30 pounds apiece—from a trailer park in Tucson, Arizona, to Avon, Indiana (a suburb of Indianapolis). Ramirez-Prado rented SUVs and booked hotels for couriers along the route. Once the packages reached their destination, Rojas-Reyes took over and sold the methamphetamine in Indianapolis.
>
> Castro-Aguirre also handled cocaine sales in New Jersey and New York. Ramirez-Prado and other couriers transported bulk quantities of cocaine from Arizona and Indianapolis to New York. There, Castro-Aguirre fronted the drugs to Carrillo-Tremillo, who would sell them and remit the proceeds to Castro-Aguirre. In much the same way, Castro-Aguirre furnished Carrillo-Tremillo with anywhere from 10 to 100 kilograms of cocaine on credit for distribution in Reading, Pennsylvania. Castro-Aguirre arranged for couriers to pick up the proceeds from his various sellers and deliver the cash to him in Arizona.
>
> The final trip to Reading proved to be the downfall of the organization. The deal started out routinely, when Castro-Aguirre fronted 100 kilograms of cocaine to Carrillo-Tremillo. The drugs made it to Reading, but alert law enforcement officers caught up with the couriers and stopped them near the Illinois-Missouri border. There the agents seized $2,400,000.
>
> That is just the bare outline of the operation. It had many moving parts, only some of which are important to this appeal. One key event involved the kidnapping and murder in 2016 of Angel Barrios-Moreno, who supplied the operation with drugs that he transported across the Mexican-U.S. border. The evidence indicated that leaders of the infamous Sinaloa Cartel had ordered the hit. They did so because Barrios-Moreno failed to pay a debt to the cartel after law enforcement officials seized a major drug shipment. The cartel was not forgiving: during one of Barrios-Moreno's trips in Mexico from Nogales to Sinaloa, members of the Sinaloa Cartel kidnapped Barrios-Moreno and two others—his nephew Adrian Barrios-Moreno and a friend Luis-Carlos Cebrero-Alvarez—and demanded a $500,000 ransom.
>
> When Castro-Aguirre learned of the kidnapping, he immediately started to raise money for the ransom. He sent couriers to pick up cash and drugs from Rojas-Reyes and Ramirez-Prado. Once he had collected $250,000, Castro-Aguirre sent couriers to make a partial payment on the ransom to a cartel member in New York. Despite these efforts, the cartel ultimately killed Barrios-Moreno, along with the other two men it had seized.

*United States v. Castro-Aguirre*, 983 F.3d 927, 932 (7th Cir. 2020).

A presentence report was prepared finding that Rojas-Reyes had a combined offense level of 50, but since the total offense level was in excess of 43, the offense level was to be treated as a level 43. (Crim. Dkt. 720 at 11-12.) Rojas-Reyes was sentenced to four terms of life imprisonment for Counts 1, 3, 5, and 8; 240 months' imprisonment for Count 4; and 40 months' imprisonment for Count 6, all to be served concurrently. (Crim. Dkt. 793.)

Rojas-Reyes filed an appeal contesting the denial of a motion to suppress, denial of a motion in limine, and his sentence. *See Castro-Aguirre*, 983 F.3d 927. The Seventh Circuit affirmed the conviction and sentence. *Id*.

On August 3, 2021, Rojas-Reyes filed the instant Motion to Vacate under 28 U.S.C. § 2255. (Dkt. 1.) He was later granted leave to amend his petition. (*See* Dkts. 8, 15.) In his Amended Petition, Rojas-Reyes claims that his counsel was ineffective for: (1) failing to object to the Court's sentencing guideline calculation; (2) failing to argue that the base offense level was improperly enhanced in violation of the Double Jeopardy Clause; and (3) not objecting to Rojas-Reyes' being shackled during the trial. (Dkt. 8 at 2-4.)

### III. DISCUSSION

**A.    Ineffective Assistance of Counsel**

A petitioner claiming ineffective assistance of counsel bears the burden of showing (1) that trial counsel's performance fell below objective standards for reasonably effective representation and (2) that this deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 688–94 (1984); *United States v. Jones*, 635 F .3d 909, 915 (7th Cir. 2011). If a petitioner cannot establish one of the *Strickland* prongs, the court need not consider the other. *Groves v. United States,* 755 F.3d 588, 591 (7th Cir. 2014). To satisfy the first prong of the *Strickland* test, a petitioner must direct the court to specific acts or omissions of his counsel. *Wyatt v. United States,*

4

574 F.3d 455, 458 (7th Cir. 2009). The court must then consider whether in light of all of the circumstances counsel's performance was outside the wide range of professionally competent assistance. *Id.* To satisfy the prejudice component, a petitioner must establish that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

### B. Sentencing-Based Challenges

First, the Court can dispense with Rojas-Reyes' sentencing-based challenges because he cannot establish the second prong of the *Strickland* analysis with respect to his sentencing, namely that of prejudice. As the United States correctly points out in its response, Rojas-Reyes was subject to a mandatory minimum of life sentence for Count 3. Specifically, the Second Superseding Indictment specifically charged Rojas-Reyes with a violation of 21 U.S.C. § 848(b) and set forth the aggravating factors that carried a mandatory sentence of life imprisonment. The jury specifically found Rojas-Reyes guilty of the enhanced offense, based on the amount of controlled substances that he conspired to distribute. (Crim. Dkt. 720 at ¶ 103; Crim. Dkt. 669 at 3.) Therefore, even if Rojas-Reyes could demonstrate any deficiency with his counsel's performance with respect to calculating the sentencing guidelines, his claims necessarily fail because he cannot show that he was prejudiced by any alleged deficiency. *See Groves*, 755 F.3d at 591 (if a petitioner cannot establish one of the *Strickland* prongs, the Court need not consider the other); *Castro-Aguirre*, 983 F.3d at 942-943 (affirming Rojas-Reyes' life sentence on appeal). Accordingly, the Court finds that Rojas-Reyes is not entitled to relief for any alleged deficiencies pertaining to his sentencing.

## C.     <u>Shackling During Trial</u>

Rojas-Reyes' remaining claim is the alleged ineffective assistance of his counsel regarding his shackling during trial. He asserts that "visible leg shackles during the Guilty-innocent phase contaminated the jury and the perception of the jurors towards Mr. Rojas and injected a presumption of guilty even before the evidence or facts was [sic] presented." (Dkt. 8 at 4). Rojas-Reyes argues that his trial counsel was ineffective when he failed to object. *Id*. at 4-5.

While defendants have a right to appear before a jury free of physical restraints, "the defendant's right to participate in the trial unrestrained is not absolute" and, "a court may order the defendant restrained when justified by a government interest specific to the trial." *Id*. (citing *Deck v. Missouri*, 544 U.S. 622, 626 (2005). Thus, as was the case in Rojas-Reyes' trial, restraints should have been used only "to maintain physical security in the courtroom, to prevent escape, or to preserve courtroom decorum." *Id*. (citing cases). Rojas-Rafael was involved in a complex drug distribution network involving large quantities of cocaine and methamphetamine that moved throughout the southwest and northeastern United States, and included connections to the very violent Sinaloa Mexican Cartel. *See United States v. Castro-Aguirre*, 983 F.3d 927, 931 (7th Cir. 2020). Four defendants were tried together: Jose Manuel Carrillo-Tremillo, Hector Saul Castro-Aguirre, John Ramirez-Prado, and Rafael Rojas-Reyes. The serious charges and the defendants' ties to the Mexican cartels (along with an adjacent kidnapping and murder) supported the "special need" for leg shackles on Rojas-Reyes and his co-defendants during trial. *See United States v. Bell*, 819 F.3d 310, 322 (7th Cir. 2016).

More importantly, as the United States points out in its response, Rojas-Reyes does not explain how the Court's measures to conceal his restraints were insufficient to avoid any prejudice. *See Maus v. Baker*, 747 F.3d 926, 927 (7th Cir. 2014) (describing permissible measures to hide

6

shackles from the jury's sight); *see also* Dkt. 18 at 19 (describing the Court's efforts to conceal Rojas-Reyes shackles from the jury). Indeed, the jury entered and exited the courtroom while Rojas-Reyes remained seated, and the table at which Rojas-Reyes was seated prevented the visibility of his leg shackles. He has designated no evidence or support in the record to show that the shackles were visible to the jury. The unsupported, conclusory statements by Rojas-Reyes to the contrary are insufficient to demonstrate that he is entitled to any relief on this claim.

## IV.  CONCLUSION

For the reasons explained in this Order, Rojas-Reyes is not entitled to relief on his § 2255 motion. There was no ineffective assistance of counsel. Accordingly, his motion for relief pursuant to § 2255 is **DENIED** and this action is **dismissed with prejudice**. Judgment consistent with this Entry shall now issue and the Clerk shall **docket a copy of this Entry in No. 1:16-cr-00123-TWP-MJD-1**. The motion to vacate (Crim. Dkt. 932) shall also be **terminated** in the underlying criminal action.

## V.  DENIAL OF CERTIFICATE OF APPEALABILITY

A habeas petitioner does not have the absolute right to appeal a district court's denial of his habeas petition, rather, he must first request a certificate of appealability. *See Miller–El v. Cockrell*, 537 U.S. 322, 335 (2003); *Peterson v. Douma*, 751 F.3d 524, 528 (7th Cir. 2014). Pursuant to Federal Rule of Appellate Procedure 22(b), Rule 11(a) of the Rules Governing § 2255 proceedings, and 28 U.S.C. § 2253(c), the Court finds that Rojas-Reyes has failed to show that reasonable jurists would find "it debatable whether the petition states a valid claim of the denial of a constitutional right" and "debatable whether [this Court] was correct in its procedural ruling." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000). The Court therefore **DENIES** a certificate of appealability.

**SO ORDERED.**

Date: 8/3/2023

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Rafael Rojas-Reyes, #15220-028
ATWATER U.S. PENITENTIARY
Inmate Mail/Parcels
P.O. Box 019001
Atwater, California  95301

Bradley A. Blackington
UNITED STATES ATTORNEY'S OFFICE
bradley.blackington@usdoj.gov